**BROWN KWON & LAM LLP**
Clara Lam, Esq. (CL6399)
275 7th Avenue, Suite 701
New York, NY 10001
Tel.: (718) 971-0326
Fax: (718) 795-1642
clam@bkllawyers.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SANIJE BOCI,**<br>*on behalf of herself and others similarly situated,*<br><br>　　　　　　**Plaintiff,**<br><br>　　- against -<br><br>**THE MARK HOTEL MANAGEMENT LLC,**<br>**THE MARK HOTEL OWNERS CORP.,**<br>**MARK HOTEL MEMBER LLC,**<br>**THE MARK HOTEL MEMBER 2 LLC,**<br>**MARK HOTEL LLC,**<br>**IZAK SENBAHAR, and**<br>**NESIM BAHAR,**<br><br>　　　　　　**Defendants.** | **No: 1:20-cv-5681**<br><br>**CLASS AND COLLECTIVE**<br>**ACTION COMPLAINT** |

Plaintiff SANIJE BOCI ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge as to herself, and upon information and belief as to other matters, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, THE MARK HOTEL MANAGEMENT LLC, THE MARK HOTEL OWNERS CORP., MARK HOTEL MEMBER LLC, THE MARK HOTEL MEMBER 2 LLC, MARK HOTEL LLC (collectively, the "Corporate Defendants"), IZAK SENBAHAR and NESIM BAHAR (collectively, the "Individual Defendants," and together with Corporate Defendants, "Defendants") and alleges as follows:

1

## INTRODUCTION

1.      Plaintiff brings this action on behalf of herself and similarly situated workers who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), seeking from Defendants: (1) unpaid wages due to time-shaving, (2) unpaid wages for automatic meal break deduction, (3) unpaid wages for compensable work time outside of scheduled work hours, (4) liquidated damages, and (5) attorneys' fees and costs.

2.      Plaintiff also brings this action on behalf of herself and similarly situated workers pursuant to the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, the supporting New York State Department of Labor Regulations, and the Federal Rule of Civil Procedure 23 ("Rule 23"), seeking from Defendants: (1) unpaid wages due to time-shaving, (2) unpaid wages for automatic meal break deduction, (3) unpaid wages for compensable work time outside of scheduled work hours, (4) statutory penalties, (5) liquidated damages, and (6) attorneys' fees and costs.

3.      Plaintiff further alleges, pursuant to the New York State Human Rights Law, New York State Executive Law, Article 15 §§ 290 *et seq.* ("NYSHRL"), and New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL"), that she was deprived of her statutory rights as a result of Defendants' discriminatory employment practices on the basis of sex, and seeks to recover (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

4.      Plaintiff further alleges, on behalf of herself and similarly situated employees who elect to opt in to this action, pursuant to the Equal Pay Act ("EPA") under the FLSA, 29 U.S.C. §§ 206 *et seq.*, and the collective action provision of 29 U.S.C. § 216(b), seeking to recover (1)

back pay, (2) liquidated damages, and (3) attorneys' fees and costs, for the deprivation of their stautotry rights as a result of Defendants' employment practices.

5.      Plaintiff further alleges, on behalf of herself and similarly situated employees, pursuant to the New York Equal Pay Act ("NYEPA") under the NYLL, New York Labor Law § 194 *et seq.*, and supporting New York State Department of Labor Regulations, seeking to recover (1) back pay, (2) liquidated damages, and (3) attorneys' fees and costs, for the deprivation of their statutory rights as a result of Defendants' employment practices.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

7.      This Court also has jurisdiction over Plaintiff's claims under the FLSA and Equal Pay Act pursuant to 29 U.S.C. § 216(b).

8.      This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

9.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

### *Plaintiff*

10.      Plaintiff SANIJE BOCI is an adult who resides in Richmond County, New York.

11.      Plaintiff is a covered employee within the meaning of the FLSA and NYLL.

12.      Plaintiff retained Brown, Kwon & Lam LLP to represent Plaintiff in this action and have agreed to pay the firm a reasonable fee for its services.

***<u>Defendants</u>***

13.     At all relevant times, Defendants owned and operated "The Mark Hotel," located at 25 E 77th Street, New York, NY 10075. Defendants operate the Mark Hotel through the Corporate Defendants.

14.     At all relevant times, Defendants jointly employed Plaintiff and similarly situated employees.

15.     At all relevant times, each Defendant had substantial control over Plaintiff's and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

16.     At all relevant times, Defendants were and continue to be employers within the meaning of the FLSA and NYLL.

### *THE MARK HOTEL MANAGEMENT LLC*

17.     Corporate Defendant THE MARK HOTEL MANAGEMENT LLC is a domestic limited liability company organized under the laws of the State of New York with a principal place of business located at 25 E 77th Street, New York, NY 10075 and an address for service of process located at c/o Alexico Management Group, Inc., 150 E 58th Street, 33rd Floor, New York, NY 10155.

18.     At all relevant times, THE MARK HOTEL MANAGEMENT LLC has done business as The Mark Hotel.

19.     At all relevant times, THE MARK HOTEL MANAGEMENT LLC had an annual dollar volume of sales in excess of $500,000.

20.     THE MARK HOTEL MANAGEMENT LLC is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

21.     At all relevant times, THE MARK HOTEL MANAGEMENT LLC has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

22.     THE MARK HOTEL MANAGEMENT LLC applies the same employment policies, practices and procedures to all non-exempt housekeeping managers at The Mark Hotel.

23.     THE MARK HOTEL MANAGEMENT LLC is listed as the payor on pay stubs received by employees of The Mark Hotel.

### THE MARK HOTEL OWNERS CORP.

24.     Corporate Defendant THE MARK HOTEL OWNERS CORP. is a domestic business corporation organized under the laws of the State of New York, with a principal place of business and address for service of process located at 25 E 77th Street, New York, NY 10075.

25.     At all relevant times, THE MARK HOTEL OWNERS CORP. has done business as The Mark Hotel.

26.     At all relevant times, THE MARK HOTEL OWNERS CORP. had an annual dollar volume of sales in excess of $500,000.

27.     THE MARK HOTEL OWNERS CORP. is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

28.     At all relevant times, THE MARK HOTEL OWNERS CORP. has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

29.     THE MARK HOTEL OWNERS CORP. applies the same employment policies, practices, and procedures to all non-exempt housekeeping managers at The Mark Hotel.

### MARK HOTEL MEMBER LLC

30.     Corporate Defendant MARK HOTEL MEMBER LLC is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business located at 25 E 77th Street, New York, NY 10075, and address for service of process located at c/o Corporation Service Company, 80 State Street, Albany, NY 12207.

31.     At all relevant times, MARK HOTEL MEMBER LLC has done business as The Mark Hotel.

32.     At all relevant times, MARK HOTEL MEMBER LLC had an annual dollar volume of sales in excess of $500,000.

33.     MARK HOTEL MEMBER LLC is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

34.     At all relevant times, MARK HOTEL MEMBER LLC has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

35.     MARK HOTEL MEMBER LLC applies the same employment policies, practices, and procedures to all non-exempt housekeeping managers at The Mark Hotel.

### THE MARK HOTEL MEMBER 2 LLC

36.     Corporate Defendant THE MARK HOTEL MEMBER 2 LLC is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business located at 25 E 77th Street, New York, NY 10075 and address for service of process located at c/o Alexico Management Group, Inc., 150 E 58th Street, New York, NY 10155.

37.     At all relevant times, THE MARK HOTEL MEMBER 2 LLC has done business as The Mark Hotel.

38.     At all relevant times, THE MARK HOTEL MEMBER 2 LLC had an annual dollar volume of sales in excess of $500,000.

39.     THE MARK HOTEL MEMBER 2 LLC is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

40.     At all relevant times, THE MARK HOTEL MEMBER 2 LLC has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

41.     THE MARK HOTEL MEMBER 2 LLC applies the same employment policies, practices, and procedures to all non-exempt housekeeping managers at The Mark Hotel.

### *MARK HOTEL LLC*

42.     Corporate Defendant MARK HOTEL LLC is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business located at 25 E 77th Street, New York, NY 10075 and an address for service of process located at c/o Corporation Service Company, 80 State Street, Albany, NY 12207.

43.     At all relevant times, MARK HOTEL LLC has done business as The Mark Hotel.

44.     At all relevant times, MARK HOTEL LLC had an annual dollar volume of sales in excess of $500,000.

45.     MARK HOTEL LLC is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

46.     At all relevant times, MARK HOTEL LLC has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

47.     MARK HOTEL LLC applies the same employment policies, practices, and procedures to all non-exempt housekeeping managers at The Mark Hotel.

### *IZAK SENBAHAR*

48.     At all relevant times, Individual Defendant IZAK SENBAHAR has been an owner and operator of The Mark Hotel.

49.     At all relevant times, IZAK SENBAHAR has been a principal of each of the Corporate Defendants.

50.     At all relevant times, IZAK SENBAHAR has had the power to (i) fire and hire employees, (ii) set their work schedules, (iii) determine their rate and method of pay, and (iv) otherwise control the terms and conditions of their employment at The Mark Hotel.

51.     At all relevant times, IZAK SENBAHAR has had the power to hire, fire, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiff and similarly situated employees at The Mark Hotel.

52.     At all relevant times, IZAK SENBAHAR has had the power to maintain employment records, including time and/or wage records of employees at The Mark Hotel.

53.     At all relevant times, IZAK SENBAHAR has been actively involved in managing the day to day operations of The Mark Hotel.

54.     At all relevant times, IZAK SENBAHAR has had authority over personnel or payroll decisions and employment policies, practices and procedures at The Mark Hotel.

55.     At all relevant times, IZAK SENBAHAR has had the power to prevent or stop any unlawful pay practices that harmed Plaintiff and similarly situated employees.

56.     IZAK SENBAHAR is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

### NESIM BAHAR

57.     At all relevant times, Individual Defendant NESIM BAHAR has been an owner and operator of The Mark Hotel.

58.     At all relevant times, NESIM BAHAR has been a principal of each of the Corporate Defendants.

59.     At all relevant times, NESIM BAHAR has had the power to (i) fire and hire employees, (ii) set their work schedules, (iii) determine their rate and method of pay, and (iv) otherwise control the terms and conditions of their employment at The Mark Hotel.

60.     At all relevant times, NESIM BAHAR has had the power to hire, fire, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiff and similarly situated employees at The Mark Hotel.

61.     At all relevant times, NESIM BAHAR has had the power to maintain employment records, including time and/or wage records of employees at The Mark Hotel.

62.     At all relevant times, NESIM BAHAR has been actively involved in managing the day to day operations of The Mark Hotel.

63.     At all relevant times, NESIM BAHAR has had authority over personnel or payroll decisions and employment policies, practices and procedures at The Mark Hotel.

64.     At all relevant times, NESIM BAHAR has had the power to prevent or stop any unlawful pay practices that harmed Plaintiff and similarly situated employees.

65.     NESIM BAHAR is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

## FLSA COLLECTIVE ACTION ALLEGATIONS
### (UNPAID WAGES)

66.     Plaintiff brings the First Cause of Action, the FLSA claims, on behalf of herself and all similarly situated current and former non-exempt housekeeping managers employed at The Mark Hotel owned, operated, and/or controlled by Defendants, from the date that is six (6) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter, and who elect to opt-in to this action ("FLSA Collective Members").

67.     At all relevant times, Plaintiff and FLSA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' common policies, practices, procedures and patterns with regards to their compensation, including their willful and repeated failure to pay Plaintiff and FLSA Collective Members their full wages for all hours worked, including overtime wages for all hours worked in excess of forty (40) per workweek. Plaintiff's claims stated herein are essentially the same as those of the other FLSA Collective Members.

68.     All of the work that Plaintiff and FLSA Collective Members have performed have been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiff and FLSA Collective Members have performed.

69.     Defendants are aware or should have been aware that federal law required them to pay employees minimum wage and overtime wages for all of the hours they work.

70.     For purposes of notice and other purposes related to this collective action, the names and contact information of FLSA Collective Members are readily available from Defendants' records.

## EPA COLLECTIVE ACTION ALLEGATIONS
### (UNEQUAL PAY)

71.     Plaintiff brings the Sixth Cause of Action, the Equal Pay Act claims, on behalf of herself and all similarly situated current and former non-exempt female housekeeping managers employed at The Mark Hotel owned, operated, and/or controlled by Defendants, from the date that is three (3) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter, and who elect to opt-in to this action ("EPA Collective Members").

72.     At all relevant times, Plaintiff and EPA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' common policies, practices, procedures and patterns with regards to their compensation, including their willful and repeated failure to pay Plaintiff and EPA Collective Members wages equal to that of their male counterparts for equal work performed. Plaintiff's claims stated herein are essentially the same as those of the other EPA Collective Members.

73.     All of the work and pay rates that Plaintiff and EPA Collective Members have performed have been assigned by Defendants, and/or Defendants have been aware of all of their work and pay rates.

74.     Defendants are aware or should have been aware that federal law required them to pay employees equally, given equal pay for equal work in the same establishment.

75.     For purposes of notice and other purposes related to this collective action, the names and contact information of the EPA Collective Members are readily available from Defendants' records.

## NEW YORK CLASS ACTION ALLEGATIONS

76.     Plaintiff brings the Second Cause of Action, the NYLL claims, pursuant to Rule 23, on behalf of herself and a class of persons consisting of all current and former non-exempt housekeeping managers employed at The Mark Hotel owned, operated, and/or controlled by Defendants, from the date that is six (6) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter (the "Class" or "Class Members").

77.     Excluded from the Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

78.     The members of the Class are readily ascertainable. The number and identity of the Class Members are determinable from Defendants' payroll and personnel records. The hours assigned and worked, the positions held, and the rates of pay for each Class Member are also determinable from Defendants' records. For the purpose of notice and other purposes related to this class action, their names and contact information are readily available from Defendants' records. Notice can be provided by means permissible under Rule 23.

79.     The potential number of Class Members is so numerous that joinder of all members is impracticable, and the disposition of their claims through this class action will benefit both the parties and the Court. Although the precise number of Class Members is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

80.     Plaintiff's claims are typical of those claims which could be alleged by any Class Member, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions.

81.     Plaintiff and Class Members were subject to the same practices of Defendants, as alleged herein, of (i) failing to pay wages due to time-shaving, (ii) failing to pay wages due to an automatic meal break deduction, (iii) failing to pay wages for compensable work time after scheduled work hours, (iv) failing to provide proper wage notices, and (v) failing to provide proper wage statements, in violation of the NYLL.

82.     Plaintiff and Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices and patterns of conduct. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member.

83.     Plaintiff and Class Members have all sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures under the NYLL.

84.     Plaintiff is able and willing to fairly and adequately protect the interests of Class Members and have no interests antagonistic to Class Members.

85.     Plaintiff are represented by attorneys who are competent, skilled, and experienced in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

86.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions

engender. Because the losses, injuries, and damages suffered by each individual Class Member are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for each Class Member to redress the wrongs done to them.

87.     On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of judicial and public resources; however, treating the claims as a class action would result in a significant saving of these costs. If appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

88.     The prosecution of separate actions by individual Class Members would create a risk of inconsistent and/or varying adjudications with respect to each Class Member, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof.

89.     Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

90.     Common questions of law and fact exist as to Class Members that predominate over any questions only affecting Plaintiff and individual Class Members and include, but are not limited to, the following:

a. Whether Defendants employed Plaintiff and Class Members within the meaning of the NYLL;

b. Whether Defendants paid Plaintiff and Class Members the full and proper wages for all hours worked;

c. Whether Defendants required Plaintiff and Class Members to work through their meal breaks;

d. Whether Defendants claimed a meal break regardless of whether Plaintiff and Class Members took a meal break;

e. Whether Defendants required Plaintiff and Class Members to utilize personal cellular devices while off-the-clock;

f. Whether Defendants paid Plaintiff and Class Members for time spent responding to work-related calls, text messages, and emails while they were off-the-clock;

g. Whether Defendants failed to furnish Plaintiff and Class Members with proper wage notices, as required by the NYLL; and

h. Whether Defendants failed to furnish Plaintiff and Class Members with proper wage statements with every payment of wages, as required by the NYLL.

## **STATEMENT OF FACTS**

*SANIJE BOCI*

91. On or about August 23, 2009, Defendants hired Plaintiff SANIJE BOCI as a room attendant at "The Mark Hotel," located at 25 E 77th Street, New York, NY 10075. In or around July 2016, Defendants promoted Plaintiff BOCI to a housekeeping manager. Plaintiff BOCI is still employed by The Mark Hotel. Starting in or around mid-December 2019, Plaintiff BOCI has been on medical leave.

92. The duties of a housekeeping manager were to inspect the hotel rooms to ensure that they were kept according to The Mark Hotel's standard, to search for room attendants when a room required attending, to complete "traces," essentially fulfilling customer requests, to change the room flower arrangements, to stock each room's mini bar station, and to bill customers for

mini bar purchases. Housekeeping managers were not able to hire or fire employees, nor were they charged with payroll or scheduling.

93.     From in or around July 2016 through June 30, 2017, Plaintiff BOCI's regular rate of pay was $26.00 per hour. Starting on or around July 1, 2017, Plaintiff BOCI's regular rate of pay was approximately $27.00 per hour. Starting on or around July 1, 2018, Plaintiff BOCI's regular rate of pay was approximately $28.00 per hour. Starting on or around July 1, 2019, Plaintiff BOCI's regular rate of pay was approximately $29.00 per hour for all hours worked. Other similarly situated employees were similarly paid at hourly rates.

94.     From in or around July 2016 through in or around December 2016, Plaintiff BOCI was regularly scheduled to work the evening shift, from 2:30 p.m. to 11:00 p.m., for five (5) days per week. During this time period, Plaintiff BOCI worked without any meal breaks. Although Plaintiff BOCI's work schedule was until 11:00 p.m., she regularly worked beyond her scheduled end time until 11:30 p.m. every workday, without additional compensation.

95.     From in or around January 2017, Plaintiff BOCI was scheduled to work the morning shift, from 9:00 a.m. to 5:30 p.m., for five (5) to six (6) days per week. From in or around January 2018, Plaintiff BOCI was scheduled to work the morning shift, from 9:00 a.m. to 5:30 p.m., for five (5) days per week. From in or around January 2019 through June 2019, Plaintiff BOCI was scheduled to work the morning shift, from 9:00 a.m. to 5:30 p.m., for six (6) days per week. At all relevant times, Plaintiff BOCI worked without any meal breaks. From in or around January 2017 through June 2019, although Plaintiff BOCI's work schedule was until 5:30 p.m., she regularly worked beyond her scheduled end time until 5:45 p.m. or 6:00 p.m. every workday, without additional compensation.

96.     From on or about July 1, 2019, Plaintiff BOCI regularly worked the morning shift, from 9:00 a.m. to 5:30 p.m., for five (5) days per week. At all times, Plaintiff BOCI worked without any meal breaks.

97.     At all relevant times, Plaintiff BOCI and other housekeeping managers either worked the morning shift, from 9:00 a.m. to 5:30 p.m., or the evening shift, from 2:30 p.m. to 11:00 p.m., for at least five (5) days per week. Plaintiff BOCI and similarly situated employees regularly worked weeks exceeding forty (40) hours per week. Plaintiff BOCI and similarly situated employees worked without any meal breaks throughout their employment with Defendants but were automatically deducted a half an hour per workday for meal breaks that they were not able to take. Plaintiff BOCI and similarly situated employees were required to work at least 15 to 30 minutes beyond their scheduled shift on a daily basis without compensation. Plaintiff BOCI and similarly situated employees were also required to work outside of scheduled work hours to respond to texts, emails and calls without compensation. As a result, Plaintiff BOCI and similarly situated employees were not paid wages for all hours worked each week, including at the proper overtime thereof for hours worked in excess of forty (40) hours per week.

*Time-shaving*

98.     At all times, Plaintiff BOCI and similarly situated employees were not able to timely leave at the end of their scheduled shifts at either 5:30 p.m. or 11:00 p.m. At all times, Plaintiff BOCI and similarly situated employees were required to stay at work and finish inspecting rooms and resolving guests' complaints and requests before they were permitted to leave. As such, Plaintiff BOCI and other housekeeping managers regularly worked at least 15 to 30 minutes after their shift was scheduled to end. Defendants' policy of requiring Plaintiff BOCI and other housekeeping managers to work beyond 5:30 p.m. and 11:00 p.m. but refusing to compensate them

beyond their scheduled end time, caused time-shaving of employee hours and resulted in unpaid wages.

99.     At all times, Defendants recorded housekeeping managers' work hours using a weekly sign-in and sign-out sheet. Plaintiff BOCI previously clocked in and out electronically when she worked as a room attendant. However, the Director of Housekeeping, Mirela Dragoi, informed her in 2016, that she was not allowed to use the electronic timekeeping device as a housekeeping manager. Plaintiff BOCI's and housekeeping managers' work hours were intentionally kept by hand so that upper management could adjust their actual hours worked. Prior to in or around July 2019, Plaintiff BOCI and other similarly situated employees were instructed by various directors and assistant directors of housekeeping to reduce their clock-out time to indicate that they ended their shift at 5:30 p.m. or 11:00 p.m., instead of their actual clock-out time. Mirela Dragoi, the Director of Housekeeping, informed Plaintiff BOCI and the housekeeping managers that they would not be paid beyond their scheduled shift unless extenuating circumstances required Mirela to specifically ask them to stay an hour or more after their scheduled end time. The assistant director, Jackson Tum, also informed Plaintiff BOCI and other housekeeping managers that they would not be paid beyond their scheduled shift. When the director or assistant director of housekeeping reviewed their hours, Plaintiff BOCI and other housekeeping managers were told to revise their weekly schedules to reflect their scheduled end time even though they were unable to timely leave on time.

100.     Starting in or around July 2019, Defendants' new Director of Housekeeping, Karolina Swierk, noticed the discrepancy of hours worked between the housekeeping managers' time sheets and their actual hours worked. Starting in or around July 2019, Ms. Swierk instructed

Plaintiff BOCI and the other housekeeping managers to put their actual end time on their timesheets instead of their scheduled end time.

101.    As a result, prior to in or around July 2019, Plaintiff BOCI and other housekeeping managers were time-shaved and unpaid for at least two (2) hours per week due to Defendants' policy of time-shaving. For weeks in which Plaintiff BOCI and other similarly situated employees worked in excess of forty (40) hours per week, such time-shaved hours were overtime hours worked.

***Time-shaving Due to Automatic Meal Break Deductions***

102.    At all times, Defendants had a policy that automatically deducted thirty (30) minutes per workday from Plaintiff BOCI and other housekeeping managers for meal breaks that they were unable to take. Plaintiff BOCI and other housekeeping managers initially crossed out the clock-out and clock-in sections for meal breaks or left the information blank when no break was taken. However, even when no meal break time was initially filled out, such time was nonetheless deducted.

103.    Upon review of those timesheets, Mirela Dragoi and Jackson Tum, the Director of Housekeeping and Assistant Director of Housekeeping respectively, yelled at Plaintiff BOCI and other housekeeping managers for not filling out a half an hour break time and informed them that they must put down a thirty (30) minute meal break on their timesheets even if the meal break was not taken. Thereafter, Plaintiff BOCI and other housekeeping managers listed a random half an hour on their timesheets for their meal break even though such breaks were not taken. Plaintiff BOCI wrote that her meal break took place between 11:00 a.m. and 11:30 a.m., even though no such break was taken.

104.    Plaintiff BOCI and other housekeeping managers were unable to take clear and free breaks because they were regularly called away to resolve guest-related issues when they

attempted to take their meal break and were previously yelled at and reprimanded for not being available to address guest issues during their meal breaks. Plaintiff BOCI and other housekeeping managers were reprimanded by Mirela Dragoi, Eric Morin, and employees from the Front Desk Department for being unavailable during their meal breaks. When Plaintiff BOCI and other housekeeping managers informed them that they were on break, Mirela Dragoi and Eric Morin told them "guests come first." Plaintiff BOCI and other housekeeping managers were also not permitted to leave the premises during their meal breaks. On the other hand, other department managers were able to take clear and free meal breaks, able to use the electronic timekeeping device to track their meal breaks, and able to leave the premises during their meal break.

105.    Due to Defendants' policy of deducting 30 minutes for meal breaks that were not taken, Defendants failed to compensate Plaintiff BOCI and other housekeeping managers for at least two and a half (2.5) hours per week. For weeks in which Plaintiff BOCI and other similarly situated employees already worked forty (40) hours or more per week, such automatically deducted hours were overtime hours worked.

***Unpaid Compensable Work Hours for Responding to Work-Related Communications After Working Hours***

106.    At all relevant times, Defendants had a policy that required Plaintiff BOCI and other housekeeping managers to respond to emails, phone calls and text messages during after-work hours. Defendants have reprimanded Plaintiff BOCI for failing to timely answer her cellphone during after-work hours regarding guest-related issues. Plaintiff BOCI and other housekeeping managers regularly spent between one and a half (1.5) to two (2) hours per week responding to such communications but were not compensated for such hours worked. For weeks in which Plaintiff BOCI and other similarly situated employees already worked forty (40) hours or more per week, such compensable hours worked were overtime hours.

&ast;                    &ast;                    &ast;

107.   Defendants' time-shaving policies and failure to pay employees for all compensable hours worked, resulted in a systematic failure to pay the full and proper wages for all hours worked by Plaintiff and other housekeeping managers at The Mark Hotel. In total, Plaintiff and other housekeeping managers were regularly not paid between four (4) to seven (7) hours per week.

108.   Throughout their employment with Defendants, Plaintiff and similarly situated employees did not receive proper notices of pay rate or pay day from Defendants, as required under the NYLL.

109.   At all relevant times, Plaintiff and other similarly situated employees did not receive proper wage statements from Defendants. Specifically, their wage statements were improper because they failed to accurately reflect Plaintiff's and other housekeeping managers' actual number of hours worked.

110.   Based on Plaintiff's observations and conversations with her co-workers at The Mark Hotel, Plaintiff, FLSA Collective Members and Class Members were similarly paid on an hourly basis.

111.   Based on Plaintiff's observations and conversations with co-workers at The Mark Hotel, Defendants paid wages to Plaintiff, FLSA Collective Members and Class Members weekly by check with wage statements.

112.   Based on Plaintiff's observations and conversations with co-workers at The Mark Hotel, Plaintiff, FLSA Collective Members and Class Members similarly suffered from Defendants' time-shaving of hours worked and failure to pay full and proper wages for all hours worked.

113.    Based on Plaintiff's observations and conversations with co-workers at The Mark Hotel, Defendants failed to provide proper wage notices to Plaintiff and Class Members.

114.    Based on Plaintiff's observations and conversations with co-workers at The Mark Hotel, Defendants failed to provide proper wage statements to Plaintiff and Class Members. The wage statements that were provided to Plaintiff and Class Members failed to accurately reflect the employees' actual hours worked and failed to state other required information.

115.    Defendants knowingly and willfully operated their business with a policy of failing to pay the full and proper wages to Plaintiff, FLSA Collective Members and Class Members for all hours worked, in violation of the FLSA and NYLL.

116.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices to Plaintiff and Class Members pursuant to the requirements of the NYLL.

117.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiff and Class Members pursuant to the requirements of the NYLL.

*                    *                    *

118.    In 2016, Plaintiff BOCI complained to her fellow housekeeping manager, Aleksander "Last Name Unknown" ("LNU"), a male employee, that the housekeeping managers were underpaid for their work, especially since high insurance premiums were deducted from their pay to cover their children's health insurance plans.

119.    In 2016, Aleksander LNU informed Plaintiff BOCI that he had met with the then General Manager, Oliver Lordonnois, and the Director of Housekeeping, Mirela Dragoi, and requested additional pay because he had children to take care of. Aleksander LNU informed

Plaintiff BOCI that he received a raise and was paid over $30 at the time. Following this conversation, Plaintiff BOCI, who also had children, similarly requested a raise from Mirela Dragoi on the same basis as Aleksander LNU, but Ms. Dragoi denied Plaintiff BOCI's request. In 2016, Plaintiff BOCI was paid $26 per hour. Aleksander LNU was hired to work as a housekeeping manager only a few months prior to Plaintiff BOCI's promotion from within The Mark Hotel to work as a housekeeping manager.

120.    In or around 2018, Plaintiff BOCI and two other female housekeeping managers, Maljorzata Pieczonka and Drita Talushllari, met with the Human Resources Director, Hampton Chauncey, to request a raise. At the time of the meeting, Aleksander LNU was paid $34.00 per hour and the three female employees were paid approximately $28.00 per hour. During this meeting with Mr. Chauncey, Plaintiff BOCI, Ms. Pieczonka and Ms. Talushllari inquired as to why they were all paid significantly less than Aleksander LNU when they were all employed as housekeeping managers and performed the same duties under the same working conditions. The three female employees informed Mr. Chauncey that the pay gap was particularly unfair because Ms. Pieczonka and Ms. Talushllari even had seniority over Aleksander LNU, but Aleksander LNU was nonetheless paid several dollars more than any of them. When Plaintiff asked Mr. Chauncey as to why Aleksander LNU was paid more than them, Mr. Chauncey did not have a response, did not provide any follow-up response, and did not give them a raise to bridge the pay gap with Aleksander LNU.

121.    In or around the summer of 2019, the new Director of Housekeeping, Karolina Swierk, increased Plaintiff BOCI's pay rate to match that of Ms. Pieczonka and Ms. Talushllari, noting the large pay gap between Aleksander LNU and the female housekeeping managers. However, Plaintiff BOCI was informed by Ms. Swierk that she was unable to get approval from

the human resources department to increase the female housekeeping managers' pay rate to match that of Aleksander LNU.

122.    At all times, Plaintiff BOCI and EPA Collective Members were paid at hourly pay rates less than their male counterparts for the same work performed.

123.    At all times, all employees employed by Defendants as housekeeping managers, including Plaintiff BOCI, the EPA Collective Members and Aleksander LNU, performed the same or similar duties as set forth in Paragraph 92 above, under the same work conditions, working either the A.M. or the P.M. shift as described above.

124.    Defendants knowingly and willfully operated their business with a policy in violation of the EPA and NYEPA.

125.    In or around late-2018 or early 2019, the Director of Rooms, Eric Morin, further fostered a hostile work environment and discriminated against Plaintiff BOCI on the basis of her sex. After Eric Morin was hired as the Director of Rooms, he subjected female employees to higher scrutiny and supervision and berated female employees, including Plaintiff BOCI. Mr. Morin yelled and cursed at the female housekeeping managers on an almost daily basis for all mistakes, however minor, and regardless of whether it was their responsibility. When any of the female housekeeping managers, including Plaintiff BOCI, received a guest complaint, they were yelled at, reprimanded and called "stupid" by Mr. Morin. However, Plaintiff BOCI observed that male housekeeping managers who received guest complaints, including Aleksander LNU, Leo LNU and Cliff Grayson, were neither yelled at, called "stupid," nor written up for guest complaints. They were simply questioned regarding the complaints, and the complaints were then resolved after a simple conversation. On the other hand, Plaintiff BOCI and other female housekeeping managers were yelled at, berated, and accused of being "unprofessional," for simply receiving a

guest complaint, including for incidents that occurred before their shifts even started. Other departments that reported to Mr. Morin were predominantly made up of male employees and were not treated this way. Plaintiff BOCI and other female housekeeping managers were treated differently from their male co-workers at The Mark Hotel and much more frequently and easily disciplined on the basis of their gender.

126.    Moreover, the department managers at The Mark Hotel received a $50 monthly reimbursement payment for the use of their personal cellular phones for work purposes. However, only the managers in the housekeeping department, which was predominantly made up of a female staff, did not receive this reimbursement payment. In or around the Summer of 2019, Plaintiff was informed by Ms. Swierk that the housekeeping managers would receive the $50 monthly reimbursement. However, thus far, Plaintiff and other female housekeeping managers either have not received any reimbursement payment or have only received this payment once, in or around November or December 2019 by a check that was backdated for the Summer of 2019.

127.    Mr. Morin was originally placed to work at the front desk and his office was next to the concierge. However, he specifically requested to be moved to the housekeeping department's office so that he could oversee the housekeeping managers and to discipline them. Mr. Morin informed the female housekeeping managers that they required additional supervision because "these ladies need to be disciplined." No other managers, either in the IT department or the engineering department were subject to such oversight and bullying. In fact, male employees in the engineering department informed Plaintiff BOCI that Mr. Morin did not dare to go into their office and yell at any of them.

128.    For example, when the wood floors were scratched, the appropriate step was for Plaintiff BOCI to inform the engineering department to make repairs. Even though Plaintiff BOCI

informed the engineering department of the repair request, Mr. Morin, while completing a room inspection with both Plaintiff BOCI and a male employee from the engineering department, berated Plaintiff BOCI instead of the engineering department for failing to fix the scratches even when it was the engineering departments' responsibility.

129.    In another instance, a VIP guest was expected to arrive, and Plaintiff BOCI had informed the engineering department that the air conditioner was not working properly as the guest requested a room temperature of 62 degrees but the air conditioner temperature remained at 78 degrees. During the room inspection with Mr. Morin, and the Director of Sales, Frank "Last Name Unknown," Plaintiff BOCI had put in the request to the engineering department to repair the air conditioner, however, when the air conditioner was not repaired at the time of the VIP guest's check-in, Mr. Morin berated Plaintiff BOCI for the engineering departments' failure to repair the air conditioner.

130.    When the room telephones needed repair, Plaintiff BOCI would report it to the IT department after a room inspection, but Mr. Morin berated Plaintiff BOCI for the broken telephone even though she had put in the repair request and it was the IT departments' responsibility to repair the telephone.

131.    These instances happened regularly throughout Plaintiff BOCI's employment with Defendants while supervised by Mr. Morin.

132.    From late 2018 through 2019, Plaintiff BOCI and other female housekeeping managers complained to Mr. Chauncey, the Human Resources Director, that Mr. Morin was harassing and verbally abusing them, and that he was doing so because they were all women. Mr. Chauncey never called or responded to any of Plaintiff BOCI's complaints and never investigated any of the complaints made against Mr. Morin.

133.    In or around summer 2019, Plaintiff BOCI and several other female housekeeping managers asked their Director of Housekeeping, Karolina Swierk, to contact one of the owners of The Mark Hotel, and asked her to set up a meeting without Mr. Morin or Mr. Chauncey's knowledge, to address the ongoing discrimination, harassment, and hostile work environment. Plaintiff BOCI was informed by Ms. Swierk that Ms. Swierk contacted Individual Defendant NESIM BAHAR but that he responded that "everyone is an adult, and that they should just handle it." No meeting was scheduled between the female housekeeping managers and Mr. Bahar.

134.    As a result of Mr. Morin's nonstop harassment and disparate treatment, subjecting Plaintiff BOCI to a continual hostile work environment, and Defendants' refusal to correct the gender-based disparate treatment and hostile work environment at The Mark Hotel, Plaintiff BOCI suffered from severe stress and stress-related insomnia, culminating into an incident on or about September 15, 2019 when Plaintiff BOCI fainted on her way to work. Plaintiff BOCI was hospitalized for two (2) days, and fainted again while she was tested at the hospital. Following her hospital tests, she was informed that the underlying cause of her fainting spells was work-related stress.

135.    Other female housekeeping managers have similarly told Plaintiff BOCI that they suffered from panic attacks, anxiety, weight gain, and depression, due to Mr. Morin's pervasive harassment and disparate treatment on the basis of their gender.

136.    In or around early December 2019, Plaintiff BOCI complained to Manuel Martinez, the then-newly hired General Manager, regarding Mr. Morin's harassment of the female housekeeping managers and that Mr. Morin was exclusively targeting only the female housekeeping managers, but nothing was changed.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

137.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

138.    The overtime provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, apply to Defendants and protect Plaintiff and FLSA Collective Members.

139.    Defendants failed to pay Plaintiff and FLSA Collective Members overtime wages for all hours worked in excess of forty (40) per workweek, to which they are entitled under the FLSA.

140.    Defendants failed to pay Plaintiff and FLSA Collective Members overtime wages for all hours worked due to Defendants' time-shaving of employees' hours worked.

141.    Defendants failed to pay Plaintiff and FLSA Collective Members overtime wages for all hours worked.

142.    Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Members of their rights under the FLSA.

143.    Defendants' unlawful conduct has been willful and intentional. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Members overtime wages for all hours worked when Defendants knew or should have known such was due. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and FLSA Collective Members.

144.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to the FLSA.

145.    As a result of Defendants' willful violations of the FLSA, Plaintiff and FLSA Collective Members have suffered damages by being denied overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, interests, and other compensation pursuant to the FLSA.

146.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Members and the actual compensation paid to Plaintiff and FLSA Collective Members should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

## COUNT II

## <u>VIOLATION OF THE NEW YORK LABOR LAW</u>

147.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

148.    At all times relevant, Plaintiff and the Class have been employees of Defendants, and Defendants have been employers of Plaintiff and the Class within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

149.    Defendants failed to pay Plaintiff and Class Members proper overtime wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations.

150.    Defendants failed to pay Plaintiff and the Class the full and proper wages for all hours worked due to Defendants' time-shaving of employees' hours worked.

151.    Defendants failed to pay Plaintiff and the Class the full and proper wages for all hours worked.

152.    Defendants failed to furnish Plaintiff and the Class with proper wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each employee as their primary language, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.

153.    Defendants failed to furnish Plaintiff and the Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

154.    Defendants failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff and the Class as required by the NYLL and the supporting New York State Department of Labor Regulations.

155.    Defendants failed to properly disclose or apprise Plaintiff and the Class of their rights under the NYLL and the supporting New York State Department of Labor Regulations.

156.     As a result of Defendants' willful violations of the NYLL, Plaintiff and the Class are entitled to recover from Defendants their unpaid overtime wages due to time-shaving of employees' hours worked, unpaid overtime wages for all hours worked, liquidated damages, reasonable attorneys' fees and costs, interests, and other compensation in accordance with the NYLL.

**COUNT III**

**<u>VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW</u>**

157.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

158.     Plaintiff is an employee and a protected person within the meaning of the NYSHRL and Defendants are covered employers under the NYSHRL.

159.     Defendants violated Plaintiff's statutorily protected rights under the NYSHRL, New York Executive Law, Article 15 §§ 290 *et seq.*, by engaging in discriminatory employment practices and subjecting Plaintiff to disparate treatment, including a hostile work environment, based on her gender and sex. Defendants subjected Plaintiff to inferior terms, conditions or privileges of employment on the basis of her gender and sex.

160.     Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYSHRL.

161.     As a result of Defendants' unlawful employment practice, Plaintiff sustained injury, including economic damages, the past and future emotional distress, and the costs of bringing this action.

162.     Due to Defendants' violations of the NYSHRL, namely, employment discrimination on the basis of sex, Plaintiff is entitled to recover from Defendants: (1) an injunction

ordering Defendants to cease its discriminatory practices as described herein; (2) economic damages; (3) compensatory damages; (4) punitive damages; and (5) attorneys' fees.

## COUNT IV

### VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

163.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

164.    Plaintiff is an employee and a protected person within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

165.    Defendants violated Plaintiff's statutorily protected rights under the NYCHRL, Administrative Code of the City of New York § 8-107, by treating her less well than Defendants' other employees on the basis of her sex. Defendants engaged in discriminatory employment practices and subjected Plaintiff to a hostile work environment on the basis of her sex.

166.    Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYCHRL.

167.    As a result of Defendants' unlawful employment practice, Plaintiff sustained injury, including economic damages, the past and future emotional distress, and the costs of bringing this action.

168.    Due to Defendants' violations of the NYCHRL, namely, employment discrimination on the basis of gender and sex, Plaintiff is entitled to recover from Defendants: (1) economic damages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees and costs.

**COUNT V**

**VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW**
**(SUPERVISOR LIABILITY)**

169.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

170.    Plaintiff is an employee and a protected person within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

171.    Under the NYCHRL, Administrative Code of the City of New York § 8-107 (13)(b), "[a]n employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent . . . where:

(1) The employee or agent exercised managerial or supervisory responsibility; or
(2) The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or
(3) The employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct."

172.    Here, Defendants are liable for the discriminatory conduct alleged herein as Defendants' employees were either managers or supervisors of Plaintiff BOCI, and Individual Defendant NESIM BAHAR had knowledge of and failed to take immediate and appropriate corrective action.

173.    As a result of Defendants' unlawful employment practice, Plaintiff sustained injury, including economic damages, the past and future emotional distress, and the costs of bringing this action.

174.    Due to Defendants' violations of the NYCHRL, namely, employment discrimination on the basis of gender and sex, Plaintiff is entitled to recover from Defendants: (1)

economic damages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees and costs.

## COUNT VI

## VIOLATION OF THE EQUAL PAY ACT

175.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

176.    Plaintiff and EPA Collective Members are employees and protected persons within the meaning of the Equal Pay Act and Defendants are covered employers under the Equal Pay Act.

177.    Under the Equal Pay Act, employers are prohibited from "paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). Defendants violated Plaintiff's and EPA Collective Members' statutorily protected rights under the Equal Pay Act by paying higher wages to employees of the opposite sex for the performance of equal work, on jobs requiring equal skill, effort, and responsibility, and for jobs which were performed under similar working conditions.

178.    Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's and EPA Collective Members' protected rights under the Equal Pay Act.

179.    As a result of Defendants' unlawful employment practice in violation of the Equal Pay Act, Plaintiff and EPA Collective Members sustained injury, including economic damages, and the costs of bringing this action.

180.    Due to Defendants' violations of the Equal Pay Act, Plaintiff and EPA Collective Members are entitled to recover from Defendants: (1) economic damages; (2) liquidated damages; and (3) attorneys' fees and costs.

## COUNT VII

## VIOLATION OF THE NEW YORK EQUAL PAY ACT

181.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

182.    Plaintiff is an employee and protected person within the meaning of the NYEPA and Defendants are covered employers under the NYEPA.

183.    Under the NYEPA, "[n]o employee with status within one or more protected class or classes shall be paid a wage at a rate less than the rate at which an employee without status within the same protected class or classes in the same establishment is paid for: (a) equal work on a job the performance of which requires equal skill, effort and responsibility, and which is performed under similar working conditions, or (b) substantially similar work, when viewed as composite of skill, effort, and responsibility, and performed under similar working conditions.". NYLL § 194. Defendants violated Plaintiff's statutorily protected rights under the NYEPA by paying higher wages to employees of the opposite sex for the performance of equal work, on jobs requiring equal skill, effort, and responsibility, and for jobs which were performed under similar working conditions.

184.    Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYEPA.

185.    As a result of Defendants' unlawful employment practice in violation of the NYEPA, Plaintiff sustained injury, including economic damages, and the costs of bringing this action.

186.    Due to Defendants' violations of the NYEPA, Plaintiff is entitled to recover from Defendants: (1) economic damages; (2) liquidated damages; and (3) attorneys' fees and costs.

187.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself, FLSA Collective Members, EPA Collective Members and the Class, respectfully requests that this Court grant the following relief:

a.  Issuance of court-authorized notice to similarly situated employees regarding the pendency of a collective action pursuant to the FLSA;

b.  Issuance of court-authorized notice to similarly situated employees regarding the pendency of a collective action pursuant to the Equal Pay Act;

c.  Certification of this case as a class action pursuant to Rule 23;

d.  Designation of Plaintiff as representative of the Class and counsel of record as Class Counsel;

e.  An award of unpaid wages resulting from Defendants' failure to pay wages for all hours worked, in violation of the FLSA and NYLL;

f.  An award of liquidated damages as a result of Defendants' willful failure to pay full and proper wages for all hours worked, pursuant to the FLSA or NYLL;

g.  Statutory penalties for Defendants' failure to provide Plaintiff and Class Members with proper wage notices, as required by the NYLL;

h.  Statutory penalties for Defendants' failure to provide Plaintiff and Class Members with proper wage statements, as required by the NYLL;

i.  An order awarding relief for Defendants' discriminatory conduct, including but not limited to economic, compensatory and punitive damages;

j.  An award of economic damages due pursuant to the Equal Pay Act and NYEPA;

k.  An award of liquidated damages as a result of Defendants' willful failure to compensate employees of equal work, at equal pay, pursuant to the Equal Pay Act and NYEPA;

l.  Pre-judgment and post-judgment interest;

m.  Reasonable attorneys' fees and costs of this action;

n.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

o.  A declaratory judgment that the practices complained of herein are unlawful under the NYSHRL and NYCHRL;

p.  A declaratory judgment that the practices complained of herein are unlawful under the Equal Pay Act and NYEPA;

q.  An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein; and

r.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.


Dated:  July 22, 2020                    Respectfully submitted,

                                        **BROWN, KWON & LAM LLP**

                          By:    */s/ Clara Lam*

                                 Clara Lam, Esq. (CL6399)
                                 275 7th Avenue, Suite 701
                                 New York, NY 10001
                                 Tel.: (718) 971-0326
                                 Fax: (718) 795-1642
                                 clam@bkllawyers.com
                                 *Attorneys for Plaintiff*