**BROWN KWON & LAM LLP**

Brown Kwon & Lam LLP
Attorneys at Law
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5828
Fax: (718) 795-1642
Email: info@bkllawyers.com

Writer's Direct: clam@bkllawyers.com
(212) 295-5827

**Via ECF**  October 20, 2022

The Honorable Sarah Netburn, U.S.M.J.
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re:  *Boci, et al. v. The Mark Hotel Management LLC, et al.*
 Case No.: 1:20-cv-5681(SN)

Dear Judge Netburn,

This firm represents SANIJE BOCI, ALEKSANDER LUKAJ, BESAIDA AGUINO, CLIFFORD GRAYSON, CRYSTAL TONG, FRANSHESCA FERMIN, MALGORZATA PIECZONKA and YOCAIRA TAVERAS ("Plaintiff) in the above-referenced matter. We write to respectfully submit the parties' Settlement Agreement, attached hereto as **Exhibit A**, for judicial approval and subsequent dismissal of the matter with prejudice pursuant to *Cheeks*. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). The Settlement Agreement resolves Plaintiffs' claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") for the total amount of $100,000.00. As part of this motion, Plaintiffs' counsel requests one-third (1/3) in attorneys' fees ($31,781.00) plus costs ($4,657.00) from the total settlement amount. For the reasons outlined below, the Court should approve this $100,000.00 settlement as a fair and reasonable compromise of Plaintiffs' claims against Defendants.

## BACKGROUND

On July 22, 2020, Plaintiff BOCI filed the above-referenced matter as a class and collective action, alleging Defendants failed to compensate Plaintiff and other housekeeping managers at The Mark Hotel for all of their hours worked, including overtime wages, in violation of the Fair Labor Standards Act, as amended ("FLSA") and the New York Labor Law ("NYLL"). Plaintiff BOCI further brought this matter as a collective action pursuant to the federal Equal Pay Act ("EPA") under the FLSA and the New York Equal Pay Act ("NYEPA") under the NYLL. Plaintiff BOCI additionally alleged that Defendants engaged in discriminatory employment practices on the basis of gender discrimination, in violation of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").

On October 2, 2020, the parties stipulated to a conditional collective certification. Following the close of the opt-in period, the parties participated in S.D.N.Y. Mediation on May 7, 2021, to no avail. Following the fact discovery period, the parties participated in a settlement

conference before Your Honor on September 14, 2022, during which the parties successfully reached a settlement in principle.

## THE SETTLEMENT IS FAIR AND REASONABLE

Pursuant to *Cheeks*, "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court." *Cheeks*, 796 F.3d at 206; *see also Wolinsky v. Scholastic Inc*., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). "Generally, there is a strong presumption in favor of finding a settlement fair, as the court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzcha v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013). "Because *Cheeks* itself did not define the contours of the approval analysis or protocols it envisioned, most district courts within our Circuit turn to the multi-factor test set out in *Wolinsky* to evaluate whether an FLSA wage and hour settlement is fair and reasonable." *Cabrera v. CBS Corp*., No. 17 Civ. 6011, 2019 US Dist LEXIS 20963, at *13 (S.D.N.Y. Feb. 8, 2019) (internal quotation marks omitted).

Accordingly, in determining whether a proposed FLSA settlement is fair and reasonable, courts consider the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *See Wolinsky*, 900 F. Supp. 2d at 335. Based on these factors, the proposed settlement should be approved as fair and reasonable

### A. Plaintiffs' Range of Possible Recovery

The first factor weighs in favor of approval. Based on estimated damages calculations, Plaintiffs' range of possible recovery was between $0 and $1,145,771.47. In a best-case scenario, assuming that all of the disputed facts alleged by Plaintiffs are entirely correct and that Plaintiffs would prevail on all claims, Plaintiffs' calculation of damages amounts to $1,145,771.47, representing $552,885.73 in unpaid wages, $552,885.73 in liquidated damages, and $40,000.00 in statutory damages pursuant to the Wage and Theft Prevention Act ("WTPA"). See **Exhibit B** for Plaintiffs' assumptions and calculation of damages.

The $100,000.00 settlement amount is approximately 10% of Plaintiffs' best-case, owed wages, including any liquidated damages and statutory penalties. Comparatively, the $100,000.00 settlement amount is nearly 20% of Plaintiffs' best-case, owed wages, not including any liquidated damages or statutory penalties. In light of the litigation risks discussed below, this settlement recovery is a fair and reasonable result.

### B. Litigation Costs and Risks

The second and third factors also favor approval. To date, the parties have already expended significant time and litigation costs in conducting depositions and e-discovery. If the parties were to continue with litigation, both parties have indicated that they each intend on moving for partial summary judgment. Given that the unpaid wage claims are time-shaving claims, claims involving extensive questions of fact, the above-captioned matter would not be resolved without

proceeding to trial. Even though the parties have completed fact discovery, this matter would require further extensive legal briefing from both sides. As such, further litigation would require significant time and expense. In addition, both sides face serious litigation risks relating to damages and liability.

Defendants maintain that Plaintiffs were at all times paid properly for all hours worked and deny all other allegations in the First Amended Complaint ("FAC"). Plaintiffs' position, on the other hand, is that Defendants failed to compensate them properly for all hours worked and that records demonstrate that they regularly worked beyond their scheduled hours, for which they were not compensated. However, since Plaintiffs' records consist of only limited time periods out of their employment with The Mark Hotel, and other records have been lost due to The Mark Hotel's use of third-party apps, whether Plaintiffs would be able to demonstrate that the amount of uncompensated hours worked were to the extent alleged in the FAC pose a serious litigation risk related to damages and liability for Plaintiffs.

Defendants also assert that they acted in good faith and that even if Plaintiffs worked hours for which they were not compensated, the alleged hours of unpaid hours worked were nowhere near the allegations set forth in Plaintiffs' FAC. If a factfinder agrees, Plaintiffs' recovery may be significantly reduced if they were found to have been time-shaved for less time than alleged in the FAC and potentially precluded from recovering liquidated damages or statutory penalties. For example, Plaintiffs' FAC alleged that they were time-shaved on average, approximately 10 hours per week, throughout each of their relevant employment period. If a factfinder believes that time-shaving did occur, but was closer to 2 hours per week, throughout each of their relevant employment period, their unpaid wages due under both the time-shaving and EPA claims would reduce from their best-case scenario of $552,885.37 to $171,851.41 for unpaid wages, resulting in the current $100,000.00 settlement being a 60% recovery without the risk of litigation and trial. While Plaintiffs are confident that they would ultimately be able to establish liability, there is significant risk with regards to damages as seen above, which would also require significant time, prolonged litigation, and a trial to determine damages.

With respect to the EPA and NYEPA claims, the nature of the claims and defense for this wage discrimination action would require a detailed analysis of the job qualifications, responsibilities, and salary information of not only Plaintiffs but also all of their male and female co-workers in comparable positions. As deposition testimony from both sides have already taken place, similar to the time-shaving claim, there is significant factual disputes regarding this claim, making it a trial issue as to whether unequal pay scales existed between male and female employees. While the EPA and NYEPA Plaintiffs believe they could establish liability, this would require significant time, prolonged litigation and trial, as Defendants expressly deny any violation of law or any liability to Plaintiffs. Furthermore, Defendants' argument that they acted in good faith at all times, if successful, would preclude Plaintiffs from recovering any liquidated damages on this claim.

As both sides face serious litigation risks relating to damages and liability, the parties believe that the settlement amount is fair and reasonable. Plaintiffs are able to obtain recovery on some of their alleged damages without the burden of further litigation and trial. Plaintiffs also believe that the settlement amount is a fair result, accounting for a percentage of the alleged back wages owed, even after the deduction of attorneys' fees and costs, while eliminating the burdens and risks of trial. While Defendants deny the allegations in the FAC, Defendants believe that the

settlement is fair and reasonable so as to avoid the anticipated burden and expense of continued litigation and trial and the fee-shifting nature of FLSA cases.

C. Arm's-Length Bargaining and Lack of Fraud or Collusion

The fourth and fifth factors also weigh in favor of approval. Plaintiffs' counsel and Defendants' counsel negotiated at arm's length at a settlement conference. In addition, both parties' counsel have significant experience handling wage and hour claims.

Further, the red-flag issues identified in *Cheeks* are not present here. The Agreement does not contain an overly broad general release, or a confidentiality or non-disparagement provision. See **Exhibit A**. In order to resolve Plaintiffs' non-wage claims, the parties have entered into a separate agreement, also dated October 20, 2022. This separate agreement contains a confidentiality provision and general release, but does not contain any type of clause that would prevent Plaintiffs from discussing the settlement of their FLSA and NYLL claims. *See Chowdhury v. Brioni Am., Inc.*, No. 16 Civ. 344, 2017 U.S. Dist. LEXIS 196469, at *13 (S.D.N.Y. Nov. 29, 2017) ("Judges in this District routinely approve bifurcated settlement agreements, in which the parties submit their FLSA agreement for court review and approval but enter into a separate agreement that addresses the non-FLSA claims, which does not require judicial [review and approval] and may contain provisions that would be impermissible under *Cheeks*.") (citing *Ortiz v. Breadroll, LLC*, No. 16 Civ. 7998, 2017 U.S. Dist. LEXIS 73657, at *4-5 (S.D.N.Y. May 15, 2017); *Santos v. Yellowstone Props., Inc.*, No. 15 Civ. 3986, 2016 U.S. Dist. LEXIS 61994, at *3, n. 1 (S.D.N.Y. May 10, 2016) (approving bifurcated settlement agreements, one resolving plaintiff's FLSA claims and the other privately resolving plaintiff's discrimination claims and containing a general release).

Lastly, as will be discussed below, Plaintiffs' counsel's requested attorneys' fees are not excessive as they only seek one-third of the settlement, which is typical of FLSA cases. The parties' separate agreement for the release of Plaintiffs' non-wage claims also provides for attorneys' fees in the amount of one-third of the settlement amount. Based on the foregoing, there is no evidence of fraud or collusion. Therefore, Plaintiffs respectfully request that the Court find that the Agreement is a "fair and reasonable" compromise of their FLSA claims against Defendants and approve the settlement.

**THE REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE**

Plaintiffs further seeks approval of attorneys' fees and costs. In accordance with Plaintiffs' contingency-fee basis retainer agreement with Plaintiffs' counsel, the Agreement provides that Plaintiffs' counsel will recover $36,438.00, equaling (i) $4,657.00 in reimbursement of costs (i.e., ECF filing fee, service of subpoenas, depositions) and (ii) $31,781.00 in attorneys' fees, which is one-third of the $100,000.00 settlement amount after deduction of the $4,657.00 in costs. See **Exhibit A**. The amount requested for attorneys' fees is fair and reasonable as it was the fee agreed upon by Plaintiffs in their retainer agreement, and a contingency fee of one-third is sufficient to account for the risks associated with representation.

Plaintiffs' counsel has worked without any compensation to date, and Plaintiffs' counsel's fees have been wholly contingent upon the result achieved. As of the date of this filing, Plaintiffs' counsel has spent approximately 408.7 hours investigating, researching, and litigating Plaintiffs'

4

claims, participating in mediation, reviewing and drafting responses for discovery, conducting and defending depositions, reviewing e-discovery, participating in settlement conference, and negotiating and executing the settlement, for a lodestar of $163,480.00. See **Exhibit C** for Plaintiffs' counsel's contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done, and an itemization of costs. *See Wolinsky*, 900 F. Supp. at 336.

Plaintiffs' counsel's request for attorneys' fees in the amount of one-third of the settlement amount is fair and reasonable. "[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases." *Meza v. 317 Amsterdam Corp.*, No. 14 Civ. 9007, 2015 U.S. Dist. LEXIS 166890, at *5 (S.D.N.Y. Dec. 14, 2015); *see also Ramirez v. Greenside Corp.*, No. 16 Civ. 726, 2017 U.S. Dist. LEXIS 30527, at *9 (S.D.N.Y. Mar. 3, 2017) (stating "contingency fees of one-third in FLSA cases are routinely approved in this Circuit"); *Leon v. Univ. 45 Fruit & Vegetable Corp.*, No. 19 Civ. 8266, 2020 U.S. Dist. LEXIS 48716, at *5 (S.D.N.Y. Mar. 20, 2020) (finding the amount of the fee award reasonable where "the attorneys' fees amount is approximately 33% of the [ ] settlement amount after costs").

Lastly, Plaintiffs' counsel expended $4,657.00 on the ECF filing fee, service of process for subpoenas on third-party witnesses, and costs for depositions. *See* **Exhibit C**. These costs are commonly reimbursed by courts in this District. *See e.g.*, *Chamoro v. 293 3rd Cafe Inc.*, No. 16 Civ. 339, 2016 U.S. Dist. LEXIS 136101, at *9-10 (S.D.N.Y. Sep. 30, 2016) (holding that court filing fees, service of process, costs of mailing, legal research, and other litigation costs are generally recoverable). As such, Plaintiffs' counsel's attorneys' fees and costs are fair and reasonable and should be approved by the Court.

\*            \*            \*

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the attached settlement agreement.

We thank the Court for its time and consideration.

Sincerely,

/s/ *Clara Lam*

Clara Lam, Esq.
clam@bkllawyers.com

cc: all parties via ECF